JOSEPH A. MESSERE *vs.* COMMISSIONER OF CORRECTION
& others.[1]

No. 88-P-887.

Suffolk.  May 8, 1989. — July 3, 1989.

Present: GREANEY, C.J., KAPLAN, & SMITH, JJ.

*Imprisonment*, Enforcement of discipline. *Due Process of Law*, Prison dis-
ciplinary proceedings.

An overnight lock-up imposed on a State prison inmate was held to not
interfere with any constitutionally protected liberty interest, with the
result that that sanction could be imposed summarily for a disciplinary
infraction characterized, in the discretion of correctional officials, as
"very minor." [546-548]

The conduct of a State prison inmate, characterized by a correctional official
as "horseplay," was a disciplinary offense encompassed within the def-
inition set forth in 103 Code Mass. Regs. § 430.22 (8) (1978), and that
official correctly treated the offense as a "very minor" infraction calling
for summary imposition of an overnight lock-up. [548]

The overnight lock-up of a State prison inmate for a designated disciplinary
infraction was warranted, and disposition of the incident was in com-
pliance with disciplinary regulations. [548]

State prison disciplinary regulations, as applied to two incidents for which
an inmate was confined in "lock-up" overnight, impinged no constitution-
ally protected right of the prisoner. [548-549]

A State prison inmate demonstrated no infringement of his rights in connec-
tion with prison disciplinary actions against him, to support claims under
the Massachusetts Civil Rights Act, G. L. c. 12, § 11I. [549]

In a prison inmate's pro se action for declaratory and other relief, the judge
properly refused to default the defendant correctional officials, where it
was clear from the documents filed with the court that the defendants
actively contested the case. [549]

CIVIL ACTION commenced in the Superior Court Department
on June 12, 1985.

[1] The superintendent of M.C.I., Cedar Junction, and a shift commander
and senior correctional officer at that institution.

The case was heard by *John L. Murphy, Jr.*, J., on a motion for summary judgment.

*Joseph A. Messere*, pro se.

*Robert M. Mendillo*, Assistant Attorney General, for the Commissioner of Correction & others.

GREANEY, C.J. A judge of the Superior Court granted summary judgment for the defendants on the plaintiff's original and supplemental complaints. In those complaints, the plaintiff, an inmate at M.C.I., Cedar Junction who is acting pro se, made numerous allegations centering on what he alleged was unlawful punishment imposed on him in connection with two "very minor" infractions. The punishment on each occasion involved overnight lock-up of the plaintiff in his cell. We affirm the judgment.

The background facts are as follows. The first incident occurred on June 6, 1985, when the plaintiff and another inmate were placed in overnight lock-up for "horseplaying." The plaintiff was confined to his cell at 3:30 that afternoon until sometime the next morning. Inmates are normally confined to their cells at 10:00 P.M.

The second incident, which was the subject of the plaintiff's supplemental complaint, occurred on November 12, 1985. On that date, the plaintiff was stopped and questioned about "being out of place" because he was in another cellblock without permission. He was told by a senior correctional officer that a report would be written on the incident. The plaintiff claimed that he had gone to the other cellblock to obtain cigarettes. The shift commander subsequently placed the plaintiff on "awaiting action status" and confined him to his cell early around 5:00 or 6:00 P.M. The plaintiff was released about 12:00 noon the next day.

The plaintiff admits both incidents.

1. *The plaintiff's allegations*. In connection with the "horseplaying" incident, the plaintiff's original complaint alleges that (1) "horseplay" is not conduct punishable under any prison regulation; (2) overnight lock-up was an impermissible sanction under the regulations; and (3) the lock-up was imposed in retaliation for his earlier complaint about the use of the prison's

public address system. The complaint also alleges that the shift commander and correctional officer who are named as defendants violated the plaintiff's due process rights in violation of the State Civil Rights Act, G. L. c. 12, § 11I, and that the Commissioner of Correction and the superintendent of M.C.I., Cedar Junction, "were so negligent and careless in their duty to monitor the actions of their subordinate personnel" that they also violated the plaintiff's civil rights under G. L. c. 12, § 11I.

In connection with the incident of "being out of place," the plaintiff's supplemental complaint alleges that his placement on "awaiting action status" constituted unlawful "summary punishment" which improperly deprived him of 3.5 hours of pay for prison work, free time, the use of the law library and use of the telephone to call his attorney.

As to both incidents, the plaintiff's complaints sought a declaratory judgment stating that "the defendants' acts, policies, and practices" violated his right to due process and various other Federal and State constitutional and statutory provisions. The complaints also requested compensatory and punitive damages and injunctive relief.

2. *Applicable regulations.* Before examining the plaintiff's claims, we outline the regulations which governed the discipline of inmates in 1985, when the incidents occurred.[2] Under these regulations, inmate infractions were classified as "very minor," "minor" or "major." Depending on the type of infraction, correctional officials could resort to informal or formal disciplinary action. 103 Code Mass. Regs. § 430.08 (1978).

As to "very minor" infractions, correctional officials had discretion to "issue a warning and handle the matter informally," if they "reasonably believe[d]" that formal disciplinary action was unnecessary. 103 Code Mass. Regs. § 430.08(1) (1978). The record contains a note dated April 2, 1980, which may have circulated among some of the prison personnel and which read, "When an employee reasonably believes that formal disciplinary action for an incident is not necessary he/she

---

[2] These regulations are contained in 103 Code Mass. Regs. §§ 430.07 through 430.23 (1978), which were promulgated pursuant to the authority contained in G. L. c. 124, § 1(*b*), (*i*) and (*q*), and G. L. c. 127, § 33.

may issue a warning or lock the inmate in overnight status. This is handling the incident informally."[3] The regulations did not define "very minor," "minor" or "major" infractions. However, they contained a "Code of Disciplinary Offenses" which specifically identified thirty-one acts as bases for punishment. 103 Code Mass. Regs. § 430.22 (1978).

The regulations further provided that a correctional official could decide that "informal handling" of an offense was inappropriate. In that case, the correctional official was required to prepare and file a disciplinary report with the shift commander before the completion of the official's tour of duty. 103 Code Mass. Regs. § 430.08(2) (1978). After prompt review of that report, the shift commander could either dismiss the report, forward it to the disciplinary officer for disciplinary action, or handle the matter informally by treating it as a "very minor" incident. 103 Code Mass. Regs. § 430.08(3)(a), (b), (c) (1978).

With regard to matters referred to him, the disciplinary officer, after an investigation, could dismiss the report, take no immediate action, or proceed with formal disciplinary action. 103 Code Mass. Regs. § 430.09(1), (a), (b), (c) (1978). If formal disciplinary action was chosen, the disciplinary officer had to designate the offense as either a "minor or major matter" with reference to certain enumerated standards. 103 Code Mass. Regs. § 430.09(2) and (3)(a)-(d) (1978). Once an incident was designated as a "minor or major matter," formal procedures were required. 103 Code Mass. Regs. §§ 430.10 and 430.11 (1978). Penalties for these matters can be severe. Finally, adjudications of guilt by the disciplinary board in connection with such incidents could be appealed to the superintendent. 103 Code Mass. Regs. § 430.18(1) (1978).

The regulations also permitted an inmate to be placed in detention on "awaiting action status." This status is preliminary to one of four other events: (1) a disciplinary hearing, (2) an investigation of a possible disciplinary offense, (3) a change in

---

[3] The record does not disclose anything about the source of this notice. The defendant makes an essentially unfocused argument that the notice had no authorized basis. In the view we take of the case nothing of substance turns on the validity of the notice.

the status of the inmate's custody, or (4) isolation when the inmate's presence in the general population poses a serious threat. 103 Code Mass. Regs. § 430.19(1) (1978). An inmate held in detention on "awaiting action status" had his confinement reviewed weekly. 103 Code Mass. Regs. § 430.19(2) (1978). See *Royce* v. *Commissioner of Correction*, 390 Mass. 425, 429-430 (1983).

3. *Due process concerns*. The plaintiff's principal argument, which underlies all his other contentions, is that the regulatory scheme outlined above for the handling of "very minor" incidents violates an inmate's rights to procedural due process because it makes the correctional officer judge and jury. We deal with this argument first.

In *Wolff* v. *McDonnell*, 418 U.S. 539 (1974), the due process rights of inmates in connection with the administration of prison discipline was discussed at length. In that case, the Court concluded that certain elements of procedural due process must be afforded to inmates when the punishment for an infraction committed in prison alters either the inmate's term of confinement (for example, by the forfeiture or the withholding of good time credits) or represents a major change in the conditions of his confinement. 418 U.S. at 571-572 n.19. However, the Court noted that the procedures prescribed in the decision to satisfy procedural due process requirements would not necessarily apply to the imposition of other sanctions which did not affect the term or nature of the inmate's confinement. *Ibid*. Before due process rights are triggered, it must appear that the sanction imposed on the inmate interferes with some protected liberty interest. Put another way, a sanction which does not work a significant deprivation of an inmate's rights may be imposed summarily for a very minor infraction.

On two separate occasions, the plaintiff was locked in his cell a few hours earlier than usual for incidents he has admitted. He was released at or before 12:00 noon the next day. Although the plaintiff apparently lost time from work, and missed some free time during which he could have used the prison library or transacted personal business, the sanction of the overnight lock-up which was imposed on each occasion was within per-

missible constitutional limits. The sanction did not affect the plaintiff's term of confinement or make a major change in his condition of confinement. See *Jordan* v. *Jones*, 625 F.2d 750, 750-751 (6th Cir. 1980) (three days of "top lock" isolation imposed on the plaintiff as a penalty for failure to stop playing cards when he was told to do so did not raise a constitutional issue even though it involved the plaintiff's separation from the prison population and the cessation of normal privileges); *Greene* v. *Secretary of Pub. Safety & Correctional Serv.*, 68 Md. App. 147, 157 (1986) (maximum punishment of confinement of the inmate to his cell for the balance of the work shift or no more than eight hours was not a "substantial deprivation" and invaded no liberty interest). We can identify no other liberty interest that might be involved in the case as a result of the short deprivation of access to other parts of the prison imposed on the plaintiff. Cf. *Jackson* v. *Fair*, 846 F.2d 811, 815-817 (1st Cir. 1988).

Further, there is nothing in the regulations themselves which created a liberty interest in the sense of prescribing a mandatory procedure which was not followed. Contrast *Maldonado Santiago* v. *Velazquez Garcia*, 821 F.2d 822, 827 (1st Cir. 1987). The regulations imparted to correctional officials reasonable discretion to decide whether a particular infraction should be considered as "very minor" and consequently handled informally or whether it should be considered more serious and handled in a manner which required compliance with a prescribed formal process. By handling an infraction informally, correctional officials had available a sanction which could not exceed an overnight lock-up.[4] The division of infractions into "very minor," "minor" and "major," and how they were handled, permitted flexibility as to an appropriate sanction based on the gravity of the infraction. The limitation on the sanction that could be imposed for a "very minor" infraction ensured

---

[4] We do not agree with the plaintiff that correctional officials are limited to a warning in dealing with "very minor" incidents. A reasonable reading of the regulations satisfies us that an overnight lock-up could be imposed when it was determined that a particular incident should be dealt with in an informal manner.

that the inmate would not be subjected to any deprivation inconsistent with the normal limits of his custody. We conclude that the plan for the handling of "very minor" infractions fell within the "wide-ranging deference" which courts must accord to prison administrators in the "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell* v. *Wolfish*, 441 U.S. 520, 547 (1979).

4. *Remaining contentions.* The plaintiff's other arguments do not require extended discussion.

(a) Although "horseplaying" is not specifically enumerated in 103 Code Mass. Regs. § 430.22 (1978) as a disciplinary offense, we believe it is encompassed within "[c]onduct which disrupts or interferes with the security or orderly running of the institution," which is set forth as a specific offense at § 430.22(8). By definition, "horseplay" usually involves rough and disorderly conduct which can very easily escalate into a fight or other major type of disruption. The plaintiff admits to engaging in "horseplay." We conclude that the correctional official who saw the incident could have treated it as a "very minor" infraction which warranted overnight lock-up.

(b) The second incident involved the plaintiff "being out of place," which is a specifically designated infraction. 103 Code Mass. Regs. § 430.22(4) (1978). The plaintiff admits the incident. We see no basis to find that his confinement to his cell and placement on "awaiting action status" violated any regulation. That status was invoked so that a prompt investigation could be conducted to ascertain whether the plaintiff's presence in another cellblock was for a purpose other than obtaining cigarettes. 103 Code Mass. Regs. § 430.19(1) (1978). A possibly serious matter of prison security was involved. The plaintiff was released by 12:00 noon the next day, and the matter ended. Had he not been released, compliance with 103 Code Mass. Regs. § 430:19(2) (1978) would have been necessary. The prison authorities were warranted in their action, and the disposition of the incident was in compliance with the regulations.

(c) There is nothing in the record to indicate that, in dealing with either incident, the correctional officials acted arbitrarily

or in a vindictive manner. Therefore, as applied, the regulations impinged on no protected right of the plaintiff.

(d) It follows from what has been said thus far that nothing has been shown to require further proceedings against any of the defendants in connection with the plaintiff's claims under the State Civil Rights Act, G. L. c. 12, § 11I.

(e) As is often the case in pro se litigation, the record contains a morass of papers, many of them lacking any definite relevance to the claims. In 1985, at the time the complaints were brought, the practice of the Attorney General representing correctional officials was to respond to an action by an inmate under G. L. c. 231A by filing a document called an "Opposition To Petition For Declaratory Relief," rather than a responsive pleading in conformance with the Rules of Civil Procedure. See *Rogers* v. *Commissioner of Correction*, 25 Mass. App. Ct. 399 (1988) (criticizing this practice). Based upon the "Opposition" and other papers on file, it was clear that the defendants actively contested the case. The judge's refusal to default the defendants for not responding to the complaints sooner than they did, or in a clearer manner, was proper.

*Judgment affirmed.*