**Jerry Thomas GRACE, Plaintiff,**

v.

**Louie L. WAINWRIGHT, et al., Defendants.**

**No. 85–530–Civ–J–16.**

United States District Court, M.D. Florida, Jacksonville Division.

March 28, 1991.

Jerry Thomas Grace, pro se.

Cecilia Bradley, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## OPINION

JOHN H. MOORE, II, District Judge.

### I. Status

Plaintiff, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 on May 9, 1985. On June 13, 1985, Plaintiff paid $2.00 as a partial filing fee and thereafter paid $118.00 on October 19, 1989. Plaintiff is *not* proceeding *in forma pauperis* in the action. On June 14, 1985, the Court ordered Plaintiff to file an amended complaint because he had failed to set forth his claims adequately in his original complaint. Plaintiff filed an amended complaint on June 28, 1985. Thereafter, on July 8, 1985, the Court ordered Plaintiff to file a second amended complaint. Plaintiff filed a second amended complaint on August 16, 1985.

### II. Plaintiff's Allegations/Claims as Set Forth in the Second Amended Complaint

Plaintiff was confined, as a prisoner of the state of Florida, at Florida State Prison in Starke, Florida, at the time he filed the complaint. Plaintiff is now confined at Union Correctional Institution, in Raiford, Florida. He names as the Defendants the following individuals and/or entities: Louie L. Wainwright, the former Secretary of the Department of Corrections; Richard L. Dugger, the former Superintendent of Florida State Prison and the current Secretary of the Department of Corrections; Dr. Nguyen, W.F. Mathews; the state of Florida; and, the Florida Department of Corrections. Plaintiff states the state of Florida and the Florida Department of Corrections are joined as Defendants for the purposes of assessing attorneys' fees pursuant

to *Glover v. Alabama Department of Corrections*, 734 F.2d 691 (11th Cir.1984).

In January 1980, Plaintiff was transferred to Florida State Prison. "For the most part of this five (5) year period", Plaintiff was denied outside physical exercise, sunshine, and fresh air. Plaintiff's Second Amended Complaint at 2. At the time of the filing of the complaint, Plaintiff was confined twenty-four (24) hours a day in a protective confinement wing (V wing) within Florida State Prison because of his inability to live safely in open population. In this type of confinement, he was forced to relinquish all opportunities to acquire outside exercise, sunshine, and fresh air. Defendants Wainwright and Dugger are aware that Plaintiff does not receive any outside exercise, sunshine, and fresh air, but have continuously refused to eliminate these deprivations. Plaintiff claims that, as a result of the denial of outside exercise, sunshine, and fresh air, he suffers physical, emotional, and psychological injuries. Specifically, he states he has been physically injured by "contracting emphysema and weakness of joints and muscles." *Id.* at 3.

Plaintiff alleges he was diagnosed with emphysema in April 1985, but has not received any treatment for it. He states, in July 1982, his neck, back, and shoulder were injured, and he was examined by Defendant Mathews on that same day, but "no exrays or serious examination of these complaints until Xrays taken June 1985 that show damage." *Id.* at 4. He concedes he was given motrin for his shoulder in August 1985, but no examination of his back or neck have been done. He further asserts he has ankle, knee, and leg problems and was examined by Dr. Nguyen in January or February of 1985. Plaintiff concludes:

> The conditions, restrictions and constraints and injuries suffered by plaintiff at the hands of the defendants constitutes cruel and unusual punishment in contravention of plaintiffs rights under the Eight Amendment of the United States Constitution, and is punishment without due process in violation of plain-

tiffs rights under the Fourteenth Amendment of the United States Constitution. *Id.* at 5.

### III. Pending Motions for Summary Judgment

On February 18, 1986, Defendants filed a Motion to Dismiss or for Summary Judgment, and Plaintiff responded on March 14, 1986. Defendants' Motion to Dismiss or for Summary Judgment was denied on May 16, 1986. Plaintiff filed a Motion for Summary Judgment on August 11, 1986. Defendants filed a Response and Renewed Motion for Summary Judgment on August 20, 1986. Plaintiff responded on September 4, 1986, November 24, 1986, and November 26, 1986. In support of their motions for summary judgment, the Court, on April 17, 1987, ordered the parties to file supplemental briefs regarding Plaintiff's exercise claim. Plaintiff submitted a supplemental brief on May 13, 1987, and Defendants submitted their supplemental brief on May 18, 1987. On November 2, 1987, the Court denied Plaintiff's August 11, 1986, Motion for Summary Judgment and Defendants' August 20, 1986, Renewed Motion for Summary Judgment.

On December 21, 1989, the Court granted Defendants' December 4, 1989, Response to Court order, requesting five months to file a motion for summary judgment. "This time was to allow Defendants' [sic] to have Plaintiff examined by physicians in order to properly address the issue of whether lack of outside exercise had caused a serious illness to Plaintiff." Defendants' Motion for Enlargement of Time, filed August 13, 1990, at 1. Defendants filed a Motion for Summary Judgment on August 31, 1990. The Court, on November 7, 1990, ordered Plaintiff to respond to the Motion for Summary Judgment and notified him to respond by referring to the Court's orders of March 13, 1986, and August 21, 1986, which contained instructions on how to properly respond to summary judgment motions. Plaintiff responded on November 28, 1990, and filed his own Motion for Summary Judgment. Defendants responded to Plaintiff's Motion for Summary Judgment on December 10,

1990, and adopted by reference their August 31, 1990, Motion for Summary Judgment.

Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983) (quoting rule). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Id.* "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Id.* (quoting *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1368 (11th Cir.1982)). *See also Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637 (11th Cir.1984).

Mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment for

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). *See also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). The "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2nd Cir.1980). More importantly, summary judgment is not only proper, but required, when a party's response to the court's notice consists of nothing "more than a repetition of his conclusional allegations." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Because there are no genuine issues of material fact, this Court is of the opinion that Defendants' Motion for Summary Judgment should be granted and judgment should be entered in favor of the Defendants.

### IV. Findings of Fact and Conclusions of Law

Federal courts are normally reluctant to interfere with matters of internal prison administration. *Hooks v. Kelley*, 463 F.2d 1210, 1211 (5th Cir.1972); *see also Newman v. Alabama*, 683 F.2d 1312, 1320 (11th Cir.1982). As the Supreme Court stated in *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) (citations omitted):

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

In recognition of the judiciary's deference, the Supreme Court has repeatedly stated:

> Such considerations [of prison administration] are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Bell v. Wolfish*, 441 U.S. at 547–48, 99 S.Ct. at 1878–79, quoting *Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974); *see Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977).

Of course, a policy of judicial restraint does not include failure to take cognizance of prisoners' valid constitutional claims. *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). "When a prison regulation or practice offends a fundamental constitutional guaran-

tee, federal courts will discharge their duty to protect constitutional rights." *Id.* at 405–06, 94 S.Ct. at 1807–08.

In the setting of a prison, there must be "mutual accommodation" between the penal institution's legitimate needs and goals and the prisoner's retained constitutional rights. *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1877; *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804, quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). In short, "a prisoner loses only those rights that must be sacrificed to serve legitimate penological needs." *United States v. Lilly,* 576 F.2d 1240, 1244 (5th Cir.1978); *see Pell v. Procunier,* 417 U.S. at 822, 94 S.Ct. at 2804.

■ Thus, in determining whether conditions of confinement are unconstitutional under the Eighth or Fourteenth Amendments, the federal court's task is limited to enforcing constitutional standards rather than the assumption of superintendence of prison administration. *Jones v. Diamond,* 636 F.2d 1364, 1368 (5th Cir.), *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Prison officials have broad discretion in the area of conditions of confinement. *Williams v. Hoyt,* 556 F.2d 1336 (5th Cir.1977), *cert. denied,* 435 U.S. 946, 98 S.Ct. 1530, 55 L.Ed.2d 544 (1978).

The eighth amendment, which applies to the state through the fourteenth amendment, *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), prohibits the infliction of cruel and unusual punishment. Under that provision, states may not impose punishments that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed. *Newman v. Alabama,* 503 F.2d 1320, 1330 n. 14 (5th Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975). *See Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (plurality opinion); *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Under this provision, the Supreme Court has stated, "conditions of confinement ... may make intolerable an otherwise constitutional term of imprisonment." *Ingraham v. Wright,* 430 U.S. 651, 669 n. 38, 97 S.Ct. 1401, 1411 n. 38, 51 L.Ed.2d 711 (1977) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1032 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Various conditions, "alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

*Hamm v. DeKalb County,* 774 F.2d 1567, 1571–72 (11th Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

## A. Outdoor Exercise/Sunlight/Fresh Air

■ Plaintiff alleges he is denied *outdoor* physical exercise, sunlight, and fresh air. It is clear that a deprivation of outdoor exercise is not *per se* cruel and unusual punishment. However, "[a]lthough deprivation of exercise *per se* does not violate the cruel and unusual punishment clause, prisoners are not wholly unprotected; such a deprivation may constitute an impairment of health forbidden under the eighth amendment." *Miller v. Carson,* 563 F.2d 741, 751 n. 12 (5th Cir.1977) (citation omitted). The lack of exercise can rise to a constitutional violation when movement is denied, and muscles are allowed to atrophy and the health of the inmate is threatened. *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985). However, it is not a "a 'wanton and unnecessary infliction of pain' to have to exercise in cramped quarters." *Id.* at 1256.

■ From May 9, 1981, through May 9, 1985, Plaintiff was assigned to numerous different wings at Florida State Prison. The relevant different housing locations are as follows:

| | |
|---|---|
| 2/19/80 | O.S.C. |
| 5/14/80 | N–1–N–7 |
| 5/24/80 | N–3–S–9 |
| 6/9/80 | N–3–S–3 |
| 6/18/80 | S–2–N–14 |
| 6/22/80 | S–3–S–11 |
| 7/31/80 | W–2–N–10 |
| 8/6/80 | O.S.C. |
| 8/14/80 | N–1–N–10 |
| 10/13/80 | W–2–N–9 |
| 2/16/81 | L–2–S–3 |
| 3/26/81 | T–3–S–1 |
| 4/28/82 | R.M.C. |
| 5/10/82 | T–3–S–6 |
| 7/28/82 | T–2–N–12 |
| 9/21/82 | W–3–N–9 |
| 4/20/83 | U–1–N–6 |
| 8/1/84 | N–1–N–14 |
| 8/16/84 | T–3–N–6 |
| 8/30/84 | M–1–N–3 |
| 12/14/84 | V–1–N–9 |
| 9/19/85 | M–1–S–14 |

Defendants' Response to Order, filed May 18, 1987, Affidavit of Robert R. Jones, Civil Litigation Coordinator, at 2. The exercise privileges differ depending on confinement status. There are no facilities for outside yard activities for V-wing. *Id.* at 1. However, Plaintiff was voluntarily assigned to V-wing for protection. *Id.* On L-wing, exercise is unlimited and outside yard privileges are available. *Id.* On M, N, T, and U wings, the administrative and disciplinary confinement wings, exercising is very limited. *Id.* Finally, on W-wing, the medical wing, it would depend on the floor location. *Id.* Plaintiff concedes he has been "on the exercise yard 1 or 2 times on S-wing in 1980 and ... on W-wing from 1982 until April 1983." Plaintiff's Response to Court's Order Filed April 17, 1987, filed May 3, 1987, at 2. In Plaintiff's confinement on V-wing the "locked in time varie[d] depending on circumstances." *Id.* "Plaintiff does the exercise as recommended by the professional medical people...." Plaintiff's Response to Defendants' Motion in Response to Plaintiff's Motion for Summary Judgment and Renewed Motion for Summary Judgment, filed September 4, 1986, at 4. Plaintiff is able to exercise inside his cell. Although Plaintiff contends "[t]here is not enough room for most exercises [in his cell]", Plaintiff's Response to Court's Order Filed April 17, 1987, filed May 13, 1987, at 4, Exhibit (A), Plaintiff has the opportunity to jog in place, perform aerobics, and do pushups. *See Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir.1988). Plaintiff has even been seen exercising outside of his cell on the first floor of V-wing. Defendants' Response to Plaintiff's Motion for Summary Judgment and Renewed Motion for Summary Judgment, filed August 20, 1986, Exhibit H, Interoffice Memorandum from Bigham to Dugger, at 2.

Plaintiff only claims that he is denied yard or recreation time *outside* of his cell. He merely wants *outdoor* exercise. It is clear that the lack of outdoor exercise, sunlight, and fresh outdoor air has not impaired any serious physical or mental medical needs of Plaintiff's. Defendants' Motion for Summary Judgment, filed August 31, 1990, Exhibits A and B. The fact that Plaintiff has been denied *outdoor* exercise, sunlight, and fresh outdoor air does not present a condition which is so foul, so inhuman, and so violative of the basic concepts of decency that it falls within the proscriptions of the Eighth Amendment.

### B. Deliberate Indifference to Serious Medical Needs

■ Plaintiff claims he suffers from neck, back, and shoulder injuries, emphysema, and ankle, knee, and leg problems. Plaintiff's Second Amended Complaint at 4. He concludes Defendants Mathews and Nguyen have been deliberately indifferent to his physical and psychological needs. *Id.* at 5.

In assessing Plaintiff's claims of cruel and unusual punishment, the Court must consider "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Cruel and unusual punishment, however, only consists of that punishment which involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). Deliberate indifference to seri-

ous medical needs of prisoners constitutes "the unnecessary and wanton infliction of pain." *Id.*

The indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). However, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Id.* at 105–06, 97 S.Ct. at 292.

To state a valid claim of medical mistreatment under the eighth amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106, 97 S.Ct. at 292 (footnote omitted).

■ Plaintiff's medical records indicate he has been treated on a regular basis for numerous medical complaints, including but not limited to, his enumerated medical needs. Defendants' Response to Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dismiss or for Summary Judgment, filed February 18, 1986, Plaintiff's Medical Records. Plaintiff has mentioned that, with regard to his emphysema, he "does not receive any of the treatment programs outlined and recommended by the National Institute of Health...." Plaintiff's Motion for Summary Judgment, filed August 11, 1986, at 2. A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *See Massey v. Hutto*, 545 F.2d 45 (8th Cir.1976). Although deliberate indifference to a serious medical need is a cognizable section 1983 claim, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), not all complaints concerning medical treatment are actionable:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 106, 97 S.Ct. at 292 (footnote omitted).

### C. Statute of Limitations

■ Plaintiff explains that he was transferred to Florida State Prison in January of 1980, has continuously remained there to date (August 16, 1985), and has been deprived of outside physical exercise, sunshine, and fresh air "[f]or the most part of this five (5) year period." Plaintiff's Second Amended Complaint at 2. It is clear that any claims accruing more than four years prior to the filing of the complaint on May 9, 1985, are barred by the statute of limitations.

> Because section 1983 does not contain a statute of limitations, reference must be made to the limitation periods prescribed by the state in which the litigation arose. *Burnett v. Grattan*, 468 U.S. 42, 49, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36, 44 (1984).

> In an attempt to avoid uncertainty and to provide a workable analysis for determining the applicable statute of limitations in section 1983 claims, the Supreme Court recently held that the most appropriate statute of limitations for all section 1983 actions is the personal injury statute of limitations of the state whose law is to be applied. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

*Majette v. O'Connor*, 811 F.2d 1416, 1419 (11th Cir.1987); *Mullinax v. McElhenney*, 817 F.2d 711, 716 n. 2 (11th Cir.1987). Fla. Stat. § 95.11(3)(a) dictates a four-year statute of limitations for actions founded on negligence.

### D. Defendants Wainwright and Dugger/Refined Causal Connection Requirement

█ With regard to Defendant Wainwright, Plaintiff states his title and explains he "is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Florida State Prison." Plaintiff's Second Amended Complaint at 2. Secondly, with regard to Defendant Dugger, Plaintiff states his title and explains he "is legally responsible for the operation of Florida State Prison and for the welfare of the inmates of that prison." *Id.* Plaintiff concludes the Defendants were fully aware of his conditions of confinement.

In any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

1. whether the conduct complained of was committed by a person acting under color of state law; and

2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Tillman v. Coley,* 886 F.2d 317, 319 (11th Cir.1989); *Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989); *Cornelius v. Town of Highland Lake, Alabama,* 880 F.2d 348, 352 (11th Cir.1989).

In addition, section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation. *Williams [v. Bennett ]* 689 F.2d [1370] at 1380, 1381 [11th Cir.1982]. Moreover, "when individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken ... where only declaratory and injunctive relief [are] sought for constitutional violations pervading an entire prison system." *Id.* at 1383.

*Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986).

### E. Defendants State of Florida and the Florida Department of Corrections/Eleventh Amendment

█ The basic philosophy of 42 U.S.C. § 1988, enacted as the Civil Rights Attorney's Fees Awards Act of 1976, is that "fee and merits liability run together." *Kentucky v. Graham,* 473 U.S. 159, 171, 105 S.Ct. 3099, 3108, 87 L.Ed.2d 114 (1985). Thus, it is clear that attorney's fees may be assessed against the state under § 1988 when the state in a § 1983 action has been prevailed against for relief on the merits because state officials were *properly* sued in their official capacity. *Id.* at 170–71, 105 S.Ct. at 3107–08. Plaintiff has properly joined the state of Florida and the Florida Department of Corrections as defendants in the action for the sole purpose of assessing attorney's fees. Plaintiff agrees that defendants cannot be held liable for damages in their official capacities.

### F. Pendent Jurisdiction

For a federal court to exercise "pendent jurisdiction" over state law claims, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.' " *L.A. Draper and Son v. Wheelabrator Frye, Inc.,* 735 F.2d 414 (11th Cir.1984). The exercise of this jurisdiction is discretionary. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "If the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son,* 735 F.2d at 428.

*Faucher v. Rodziewicz,* 891 F.2d 864, 871–72 (11th Cir.1990); *Ortega v. Schramm,* 922 F.2d 684, 687 (11th Cir.1991).

### G. Conclusion

For the above-stated reasons, Plaintiff's Motion for Summary Judgment will be denied, Defendants' Motion for Summary Judgment will be granted, and judgment will be entered in Defendants' favor.