# JOSEPH A. PULEIO *vs.* COMMISSIONER OF CORRECTION & others.[1]

No. 99-P-208.

Suffolk. March 8, 2001. - August 17, 2001.

Present: PORADA, LENK, & GELINAS, JJ.

*Imprisonment,* Enforcement of discipline, Access to courts. *Administrative Law,* Prison disciplinary proceeding, Standard of proof. *Due Process of Law,* Prison disciplinary proceedings. *Constitutional Law,* Imprisonment. *Civil Rights.*

A Superior Court judge correctly concluded that a disciplinary decision rendered against a prisoner was based on sufficient evidence that the prisoner knowingly and intentionally possessed contraband. [305-306]

A State prison inmate failed to demonstrate that a hearing officer's denial of his request for certain witnesses and written materials at a prison disciplinary proceeding, and his resulting confinement in a segregated disciplinary unit at the Massachusetts Correctional Institution at Norfolk, violated his procedural due process rights under either the Federal or State Constitution. [306-308]

This court concluded, in line with the weight of Federal authority on the issue, that a State prison inmate may bring an action under 42 U.S.C. § 1983 to redress alleged constitutional deficiencies in a disciplinary proceeding when the prisoner's underlying conviction and over-all sentence have not been affected, without a showing that the resulting disciplinary sanctions were expunged or invalidated in other judicial or administrative proceedings. [308-310]

A Superior Court judge properly granted summary judgment in favor of defendant prison officials in an action brought under 42 U.S.C. § 1983 by a State prison inmate, claiming that the defendants initiated a disciplinary proceeding against him in retaliation for his prior litigation against the Department of Correction and thus abridged his right to freedom of speech under the First Amendment to the United States Constitution, where the

---

[1]Larry E. DuBois is named individually as well as in his capacity as Commissioner of the Department of Correction. Paul DiPaolo is named individually and as superintendent of the Massachusetts Correctional Institution at Norfolk (M.C.I., Norfolk); Barbara Guarino, individually and as deputy superintendent of M.C.I., Norfolk; William Mongelli, individually and as librarian at M.C.I., Norfolk; and John Hunter, Tony Parks, Andre A. Carvalho, and ten unnamed John and Jane Does, individually and as correction officers at M.C.I., Norfolk.

defendants had an independent, permissible reason for disciplining the defendant [310]; further, the defendant failed to demonstrate that he suffered any actual harm from the temporary deprivation of access to certain legal materials in contravention of his constitutional right of access to the courts [311-312].

A Superior Court judge properly concluded that a State prison inmate failed to demonstrate that the actions of prison officials, in disciplining him for a valid security reason, were arbitrary, vindictive, or improper, so as to establish a violation of the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H-11I. [312-313]


CIVIL ACTION commenced in the Superior Court Department on March 19, 1997.

The case was heard by *Margaret R. Hinkle,* J., on motions for summary judgment.

*Joseph A. Puleio,* pro se.

*Daniel A. Less* for the defendants.

PORADA, J. The plaintiff, a pro se prisoner serving a life sentence for murder in the first degree, filed this action in the Superior Court against seven named and ten unnamed past or present employees of the Department of Correction, individually and in their official capacities. In this action, the plaintiff sought judicial review of a disciplinary proceeding under G. L. c. 249, § 4; a declaration under G. L. c. 231A that his rights to due process, freedom of speech, and access to the courts had been violated; and declaratory relief and punitive damages under 42 U.S.C. § 1983 (Supp. 1998) and G. L. c. 12, §§ 11H-11I, for violation of his Federal and State constitutional rights. The defendants filed a motion to dismiss or, in the alternative, for summary judgment. The plaintiff filed a cross motion for summary judgment. A Superior Court judge allowed the defendants' motion for summary judgment and denied the plaintiff's motion. The plaintiff appeals, claiming the motion judge erred in concluding that the disciplinary decision rendered against him was based on sufficient evidence; in failing to declare that his procedural due process rights were violated by the denial of his request for witnesses and written materials in that proceeding; in ruling that under *Edwards* v. *Balisok,* 520 U.S. 641 (1997), his claims for declaratory relief and damages under 42 U.S.C. § 1983 fail because the plaintiff did not show that the disciplin-

ary proceeding on which his claims were based had been invalidated or expunged; and in ruling that the plaintiff's claims under the State Civil Rights Act must be dismissed because of his failure to demonstrate any interference with his rights under the Constitutions or laws of either the Federal or State government or that the alleged deprivation was the result of threats, intimidation, or coercion. We affirm for the reasons stated below.

We summarize the pertinent facts, which are not in dispute.

The plaintiff was strip-searched as he entered the RB unit, a departmental segregation/special management unit at the Massachusetts Correctional Institution at Norfolk (M.C.I., Norfolk), to provide legal assistance to other inmates. Correction officer William Milan discovered a piece of wire solder in the plaintiff's coat pocket. Milan informed the plaintiff that the wire solder was contraband and that he would receive a disciplinary report for possessing it. The plaintiff was returned to his cell on awaiting action status pending an investigation of the incident. The following day he was interviewed by another correction officer, John Hunter. The plaintiff told Hunter that he was unaware that the solder was in his pocket and that the solder was probably inadvertently left in his pocket from his confinement at North Central Correctional Institution at Gardner where he had performed electronic repairs under the supervision of Sergeant Ken Arsenault. Following the interview, Hunter placed him in the RB unit. After this placement, the plaintiff found a second piece of solder in his coat pocket and delivered it to correction officer Tony Parks, who gave it to Sergeant Scott Paiva. The plaintiff also informed the superintendent at M.C.I., Norfolk, Paul DiPaolo, in writing of this discovery. Thereafter, the plaintiff was served with a disciplinary report based solely on the discovery of the first piece of solder in his coat pocket. The report charged the plaintiff with violation of several disciplinary regulations, including failing to keep his person or quarters in accordance with institutional rules, 103 Code Mass. Regs. § 430.24(3) (1993), and possession of items not authorized for retention or receipt by an inmate, 103 Code Mass. Regs. § 430.24(24) (1993). Prior to his hearing, the plaintiff requested a copy of the initial incident report filed by Milan, a copy of the letter he wrote to Superintendent DiPaolo, and a copy of the

incident report written by Paiva concerning the second piece of solder delivered to Parks. The plaintiff also requested that Milan, Hunter, Paiva, and Arsenault appear as witnesses. The hearing officer, Parks, denied the plaintiff's request that Paiva and Arsenault appear as witnesses as well as the plaintiff's request for the written materials. At the hearing, Milan testified to finding the solder in the plaintiff's jacket and Hunter testified to placing the plaintiff in the RB unit. The plaintiff testified that he did not know that the first piece of solder was in his jacket and that it must have been left there inadvertently from his stay at the Gardner facility. He argued that he could not be found guilty because he did not knowingly possess the solder and had no intent to evade the institutional rules. The hearing officer found him guilty of failing to keep his person in accordance with institutional rules and of possession of contraband. For those violations, the hearing officer sanctioned the plaintiff with ten days' detention status and loss of the contraband and recommended custody status review. The plaintiff filed an appeal from this decision with Superintendent DiPaolo. The denial of the appeal prompted this action.

We address the issues raised by the plaintiff.

1. *Certiorari.* The plaintiff challenges the guilty finding in the disciplinary proceeding on the grounds that no evidence was presented that he had knowledge or intent to possess contraband and that his procedural due process rights under the Federal and State Constitutions were violated by the hearing officer's denial of his request for witnesses and written materials. We address first his claim that he could not be found guilty of possession of contraband without proof of knowledge and intent to possess contraband.

Our review of a disciplinary proceeding is based on whether the record contains substantial evidence to support the hearing officer's decision. *McLellan* v. *Acting Superintendent, Mass. Correctional Inst., Cedar Junction,* 29 Mass. App. Ct. 122, 127 (1990). Here, we need not reach the issue whether the possession must be shown to be both knowing and intentional for a violation to occur because there was ample evidence of both. The plaintiff's knowledge and intent to exercise dominion and control over the solder can be inferred from the uncontroverted

evidence that the solder was found in a jacket worn by him at the time of the strip search and in his admission that he probably brought the solder with him from his confinement at Gardner. More than this was not required. Cf. *Cepulonis* v. *Commissioner of Correction*, 15 Mass. App. Ct. 292, 294 (1983) (knowledge and control over contraband could be inferred from discovery of contraband in inmate's cell that he had occupied for two and one-half months).

The plaintiff claims that his procedural due process rights under both the Federal and State Constitutions were violated.[2] Under the Federal Constitution, it is now well established that an inmate is entitled to the protections of procedural due process only when an existing liberty or property interest is at stake. See *Sandin* v. *Conner*, 515 U.S. 472, 484 (1995); *Torres* v. *Commissioner of Correction*, 427 Mass. 611, 617-618, cert. denied, 525 U.S. 1017 (1998). A liberty interest is infringed only if the punishment inflicted upon the inmate imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin* v. *Conner*, 515 U.S. at 484. *Torres* v. *Commissioner of Correction*, 427 Mass. at 618. Ten days' detention in a disciplinary segregated unit does not present the type of atypical, significant deprivation in relation to ordinary incidents of prison life that results in infringement of a liberty interest. *Sandin* v. *Conner*, 515 U.S. at 486 (thirty days in segregated confinement with insignificant differences from general confinement did not trigger liberty interest). See *Torres* v. *Commissioner of Correction*, 427 Mass. at 616-617. Similarly, the plaintiff has not shown that the conditions of his confinement[3] set forth in his complaint give rise to atypical, significant deprivations in relation to ordinary incidents

---

[2]The plaintiff sought a declaration under G. L. c. 231A that his procedural due process rights were violated. The motion judge properly treated the plaintiff's claim as an action in the nature of certiorari under G. L. c. 249, § 4, rather than one for declaratory relief. *McLellan* v. *Commissioner of Correction*, 29 Mass. App. Ct. 933, 934 (1990). *Pidge* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 32 Mass. App. Ct. 14, 17 (1992).

[3]The plaintiff identified those conditions in his complaint as restricted shower activity, visitation with attorneys, family and friends, telephone access, library access, personal property privileges, and canteen purchases. Because those activities were temporarily restricted and not prohibited altogether, the restrictions did not constitute atypical or significant hardships. See *Grace* v.

of prison life. Consequently, there was no violation of procedural due process under the United States Constitution.

Although we would be inclined to apply the same analysis to the defendant's claim under the State Constitution, we are cognizant that it has not yet been decided whether the *Sandin* v. *Conner* standard should be applied in analyzing claims of deprivation of procedural due process under our State Constitution. *Hudson* v. *Commissioner of Correction*, 431 Mass. 1, 7 (2000). However, we need not decide that issue in this case, because we think the plaintiff received the due process that our State Constitution affords. See *id* at 7-8.

The plaintiff's claim on appeal is based solely on the hearing officer's refusal to allow the plaintiff to call Sergeant Paiva as a witness to testify about the receipt of the second piece of solder from the plaintiff and to present documents relating to his delivery of the second piece of solder to correction officials. While an inmate has a right to call witnesses and present evidence at a disciplinary hearing, this right is not unqualified. See 103 Code Mass. Regs. § 430.14(4)(a) (1993); *Torres* v. *Commissioner of Correction*, 427 Mass. at 617-619 & n.11. See also *Wolff* v. *McDonnell*, 418 U.S. 539, 566 (1974); *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 390 (1983). A hearing officer may refuse an inmate's right to call a witness or present evidence on the ground of relevance.[4] See 103 Code Mass. Regs. § 430.14(4)(a); *Torres* v. *Commissioner of Correction, supra.* See also *Wolff* v. *McDonnell, supra*; *Nelson* v. *Commissioner of Correction, supra.* The hearing officer should have indicated his reasons for the denial of those requests in a written decision, 103 Code Mass. Regs. § 430.17(1)(c) (1993). We do not think that his failure to do so, however, requires the disciplinary hearing to be invalidated. This was a technical error that did not adversely affect the material rights of the plaintiff. See *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 511 (1983). Both Sergeant Paiva's testimony and his incident

*Wainwright*, 761 F. Supp. 1520, 1524-1525 (M.D. Fla. 1991) (claim under Eighth Amendment).

[4]The hearing officer was aware that the plaintiff had found a second piece of solder, because he was the correction officer who had received it from the plaintiff and then delivered it to Sergeant Paiva.

report related to the second piece of solder with which the plaintiff had not been charged. As such, it is apparent from the administrative record that this evidence was irrelevant to a determination of the plaintiff's possession of the first piece of solder, which he does not deny was contraband. Accordingly, there was no violation of procedural due process in the hearing officer's denial of his requests.

2. *Claims under 42 U.S.C. § 1983.* The plaintiff claims that the disciplinary proceeding was instituted against him in retaliation for his previous litigation against the department and therefore resulted in denial of his constitutional right to due process, freedom of speech, and the right to petition the courts to address his grievances.[5] The plaintiff argues that the motion judge employed the wrong standard in analyzing the viability of those claims and entering summary judgment for the defendants.

Relying on *Edwards* v. *Balisok*, 520 U.S. 641 (1997), the motion judge dismissed the plaintiff's claims under § 1983 on the ground the claims were barred because the plaintiff had failed to show that the disciplinary sanctions had been expunged or invalidated in other judicial or administrative proceedings. In *Edwards*, the United States Supreme Court determined that a State prisoner could not obtain declaratory relief or damages under § 1983 for alleged constitutional deficiencies in a disciplinary proceeding that resulted in the loss of good time credits absent a showing that the disciplinary sanctions imposed in that proceeding had been invalidated or expunged in other judicial or administrative proceedings.[6] *Id.* at 646-648. The focus of that decision was on the prisoner's loss of good time credits which affected the over-all length of the prisoner's

---

[5]The defendants do not dispute that several days before the seizure of the first piece of solder from the plaintiff, the plaintiff had been successful in obtaining a preliminary injunction against the Commissioner of Correction in the Superior Court relating to the repeal of a number of prison regulations affecting Puleio and other prisoners.

[6]In reaching this result, the Supreme Court relied upon its prior decision in *Heck* v. *Humphrey*, 512 U.S. 477, 486-487 (1994), in which the Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a State tribunal authorized

incarceration. However, the prisoner in that case had also received ten days in isolation and twenty days in segregation. *Id.* at 643. The issue left open by *Edwards* was whether the favorable termination ruling applied to challenges to disciplinary sanctions not affecting the fact of the prisoner's conviction or the length of sentence. Subsequent to the *Edwards* decision, the Supreme Court decided *Spencer* v. *Kemna*, 523 U.S. 1, 3-6, 18 (1998), in which a prisoner's petition for habeas corpus challenging the revocation of his parole on constitutional grounds was dismissed because the prisoner had completed his sentence and, thus, the majority of the court determined, the issue was moot. In that opinion, however, five of the justices in concurring and dissenting opinions expressed the view that where habeas corpus is not available to a prisoner to address constitutional wrongs,[7] § 1983 must be available. *Id.* at 18-25. After the *Spencer* decision a number of Federal courts that have considered the issue whether an action under § 1983 may be brought to redress allegedly unconstitutional conditions of confinement when the prisoner's underlying conviction and over-all sentence are not affected have held that an action under § 1983 may be maintained. *Jenkins* v. *Haubert*, 179 F.3d 19, 26-27 (2d Cir. 1999). *DeWalt* v. *Carter*, 224 F.3d 607, 616-617 (7th Cir. 2000). See *Anyanwutaku* v. *Moore*, 151 F.3d 1053, 1055-1057 (D.C. Cir. 1998). See also *Figueroa* v. *Rivera*, 147 F.3d 77, 80, 82 (1st Cir. 1998) (court held that family's challenge to deceased prisoner's conviction and sentence on constitutional grounds was barred without proof that conviction and sentence had been expunged or overturned, but also ruled that family's claim that prisoner had received inadequate medical care while in prison was claim that could be maintained under § 1983); *Shabazz* v. *Cole*, 69 F. Supp. 2d 177, 193-194 (D. Mass. 1999) (prisoner's attack on procedures followed in his disciplinary hearing and claim of retaliation were cognizable under § 1983). Contrast *Clarke* v. *Stalder*, 154 F.3d 186, 189-

---

to make such determination, or called into question by a Federal court's issuance of a writ of habeas corpus.

[7]Habeas corpus would not be available to a prisoner who was not challenging his underlying conviction or length of incarceration. See 28 U.S.C. § 2254 (1994).

191 (5th Cir. 1998), cert. denied, 525 U.S. 1151 (1999); *Huey* v. *Stine*, 230 F.3d 226, 228-230 (6th Cir. 2000).

In line with the weight of Federal authority on this issue, we are of the opinion that the motion judge applied the wrong standard in ruling that the plaintiff's claims under § 1983 were barred. The prisoner did not need to show that the disciplinary proceeding had been expunged or invalidated before bringing an action under § 1983 because his claims did not challenge the validity of his conviction for murder or the length of his incarceration. Nevertheless, we are of the opinion that the motion judge's entry of summary judgment for the defendants on the plaintiff's claims under § 1983 should be upheld on other grounds.

The holding in *Sandin* v. *Conner*, 515 U.S. at 486, is dispositive of the plaintiff's claim that his procedural due process rights under the United States Constitution were violated, because, as noted in our discussion of his action in the nature of certiorari, a sanction of ten days in departmental segregation does not constitute infringement of a liberty interest. In order to prevail on his claim that the disciplinary proceeding was instituted in retaliation for his prior litigation against the department as set forth in his verified complaint and that, thus, his right to freedom of speech and to petition the courts for redress of his grievances under the First Amendment was abridged, the plaintiff would have had to overcome the defendants' showing that the defendants had legitimate penological reasons for imposing the disciplinary sanctions against him. See *McDonald* v. *Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (plaintiff must prove he would not have been transferred "but for" alleged retaliation). The mere fact that the plaintiff was not placed in a segregated unit until one day after the seizure of the contraband and that no disciplinary action was taken with respect to the second piece of solder does not alter the fact that his possession the first piece of solder, which was contraband, was a violation of regulations for which he could be punished. Even if the defendants had an impermissible reason for disciplining the plaintiff, they are not liable if they also had an independent, permissible reason for doing so. *Scarpa* v. *Ponte*, 638 F. Supp. 1019, 1029 (D. Mass. 1986). Summary judgment was properly entered on this claim.

The plaintiff also claims that the defendants have violated his constitutional right of access to the courts. See *Bounds* v. *Smith*, 430 U.S. 817, 825-828 (1977); *Harris* v. *Commissioner of Correction*, 409 Mass. 472, 479-480 (1991). He asserts on appeal that this violation consisted of denial of access to his legal materials and lack of access during his confinement in administrative segregation to legal indexing materials produced after the enactment of the Federal Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). He claims that those deprivations impeded his ability to file a motion for authorization to file a second petition for habeas corpus with the United States Court of Appeals for the First Circuit. However, it is not enough for the plaintiff to show that he was denied access to his legal papers or that the library materials available to him were inadequate to meet his needs; he is required to show that those alleged deficiencies hindered his efforts to present a nonfrivolous legal claim. *Lewis* v. *Casey*, 518 U.S. 343, 351-353 (1996) (actual injury must be shown).

The plaintiff does not meet this burden by simply showing that his motion was denied,[8] for the right of access to the courts does not mean that a State must enable a prisoner to litigate effectively. *Lewis* v. *Casey*, 518 U.S. at 354-355. Rather, the plaintiff was required to demonstrate that the temporary inconvenience of lack of access to his legal files or the legal indices during this confinement prevented or hindered his ability to file a second petition for habeas corpus under 28 U.S.C. § 2244(b)(2)(B)(i) & (ii) (Supp. IV 1998).[9] Here, the plaintiff neither quarrels with the judge's finding that he could have requested additional legal material during his confinement nor with the fact that his motion for authorization to file a second

---

[8]The motion was denied by the United States Court of Appeals for the First Circuit on the grounds that the plaintiff failed to meet two of the prerequisites for filing a motion for authorization to file a second petition for habeas corpus, namely, that but for constitutional error no reasonable fact finder would have found him guilty, and that the factual predicate for his claim could not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B)(i) & (ii) (Supp. IV 1998).

[9]Under 28 U.S.C. § 2244(b)(2), the plaintiff's motion could only have been allowed if a three-judge panel of the First Circuit Court of Appeals determined that the second or successive application made a prima facie showing that

petition was filed two weeks after his removal from administrative segregation, when those alleged deprivations no longer existed;[10] moreover, the motion was denied because of the plaintiff's inability to meet the necessary *factual* predicates for obtaining authorization to file a second petition for habeas corpus. In these circumstances, the plaintiff has failed to demonstrate that he suffered any actual harm from the temporary deprivation of those materials[11] and, accordingly, has suffered no deprivation of his constitutional right of access to the courts. See *Lewis* v. *Casey*, 518 U.S. at 351.

4. *State civil rights claim.* In order for the plaintiff to recover under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H-11I, the plaintiff had to establish that his exercise or enjoyments of rights secured by the Constitutions or laws of either the United States or the Commonwealth had been interfered with, or that an attempt was made to interfere with them, and that the interference or attempted interference was by threats, intimidation, or coercion. *Reproductive Rights Network* v. *President of Univ. of Mass.*, 45 Mass. App. Ct. 495, 505 (1998). Here again,

---

"(A) . . . the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

"(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

"(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

[10]Although the plaintiff asserts that he did not have his legal files in his possession at the time he filed his motion, he acknowledges in his verified complaint that his placement in administrative segregation, and hence the deprivation of legal materials and restricted library access, existed from December 22, 1996, until March 21, 1997. His motion for authorization was filed on April 4, 1997.

[11]Of note is the fact that in his motion for reconsideration of the denial of the motion seeking authorization to file a second petition for habeas corpus, filed when he had access to those materials, see note 10, *supra*, he cites no case postdating the enactment of the Federal Antiterrorism and Effective Death Penalty Act.

the plaintiff argues that the disciplinary sanctions imposed upon him were in retaliation for his successful litigation against the department rather than for his possession of the contraband. Thus, he argues, the defendants interfered or attempted to interfere with his rights to due process, freedom of speech, and to petition the courts for redress of grievances.

While we assume without deciding that the disciplining of a prisoner for an improper motive may in certain circumstances constitute a violation of the Massachusetts Civil Rights Act, the disciplining of a prisoner for a valid security reason even for a minor infraction does not. See *Messere* v. *Commissioner of Correction*, 27 Mass. App. Ct. 542, 548-549 (1989). Here, the delay of one day before placing the plaintiff in a segregated unit after the seizure of the first piece of solder while the infraction was being investigated and the delay of four days in recovering the second piece of solder from the plaintiff after he gave notice of his possession of it to the superintendent by letter to one of the guards in his unit do not show that the defendants' actions were arbitrary, vindictive, or improper. For that reason and because the defendants had a legitimate penological reason for punishing the plaintiff, the actions by the defendants do not suffice to establish a claim of retaliation. See *id.* at 542-543, 548-549. See also *Longval* v. *Commissioner of Correction*, 404 Mass. 325, 333 (1989). For this reason and the other reasons cited in this opinion, the motion judge did not err in concluding that the plaintiff has failed to establish that the defendants interfered or attempted to interfere with any rights secured by the Constitutions or laws of the United States or of the Commonwealth or that said interference was accomplished by threats, intimidation, or coercion.

*Judgment affirmed.*