Hamlin, J.
Plaintiff, Jerome Tibbs, is currently under the lawful custody of the Department of Correction (“DOC”) at the Souza-Baranowski Correctional Center (“SBCC”) in Shirley, Massachusetts. Plaintiff brings this action in the nature of certiorari under G.L.c. 249, §4 against defendants Paul Dipalo (“Dipalo”), the Superintendent of SBCC, M. Gosselin (“Gosselin”), the Sargent Disciplinary Officer at SBCC, David Hammond (“Hammond”), a Disciplinary Hearing Officer at SBCC, and Freddy Gonzalez (“Gonzalez”), a Disciplinary Hearing Officer at SBCC. Specifically, plaintiff alleges that the guilty finding at the disciplinary hearing was based on insufficient evidence (Count I); that defendants exceeded their authority under 103 Code Mass. Regs. §430.00 (Count II); that defendants violated his federal and state constitutional rights (Count III); and that defendants violated his civil rights as protected by the Massachusetts Civil Rights Act, G.L.c. 12, §11H and I (Count IV). Plaintiff seeks damages under 42 U.S.C. §1983. Defendants have filed a motion to dismiss the complaint on the grounds that plaintiff has failed to state a claim for which relief can be granted pursuant to Mass.R.Civ.P. 12(b)(6). For the following reasons, defendants’ motion is ALLOWED.
BACKGROUND
Accepting as true the factual allegations of plaintiffs complaint and any reasonable inferences therefrom, the material facts are as follows: On or about November 11, 1998, prison guards observed an inmate, believed to be plaintiff, being disruptive in his unit by kicking his cell door, flooding his cell, yelling obscenities at staff, and inciting a demonstration in the unit. Soon thereafter, in conjunction with the November 11 incident, plaintiff was placed on awaiting action status. On November 23, 1998, plaintiff was issued a disciplinary report (“d-report”)[2] for the acts which allegedly occurred on November 11, 1998.
Prior to the hearing, plaintiff submitted to defendants his request for witnesses and evidence which plaintiff believed would prove him innocent. Plaintiff requested that Austin Ryan (“Ryan”), an inmate who resides in the cell next to plaintiff, be called as a witness. Plaintiff also requested that video tapes, computer records, all incident reports, use of force reports, and all maintenance reports be produced as evidence and requested in writing that the disciplinary hearing be recorded with a tape recorder.
On December 1, 1998, plaintiff received a letter in reply from Hammond, the disciplinary hearing officer, informing plaintiff that he denied plaintiffs request for Ryan to testify as a witness because Ryan’s testimony would be irrelevant and that he denied plaintiffs request for evidence because the evidence was either irrelevant or non-existent. The letter also informed plaintiff that the hearing would be recorded with a tape recorder.
On December 7, 1998, the disciplinary hearing was held, and Hammond was the presiding disciplinary hearing officer. Before the charges were read, however, plaintiff and Hammond engaged in a heated dispute due to the fact that a tape recorder had not been *590 provided. Hammond claimed that he never received plaintiffs request to have the hearing recorded. Hammond then called plaintiff several racial names and terminated the hearing stating that he was finding plaintiff guilty. Several times, both before and after Hammond stated that the hearing was over, plaintiff challenged Hammond’s impartiality. Hammond, however, refused to call his superior officer, Gosselin, the Sargent Disciplinary Officer.
Shortly thereafter, plaintiff spoke with Gosselin, who was making her routine round in the segregation unit. Plaintiff explained to Gosselin what had taken place during the hearing. Plaintiff then showed Gosselin the notice that plaintiff received stating that’ the hearing would be recorded. Plaintiff also informed Gosselin that the same thing happened to another prisoner, Dornell Wigfall (“Wigfall”). Subsequently, Gosselin ordered a new hearing for plaintiff and Wigfall.
On December 8, 1998, plaintiff attended a new hearing held by Gonzalez, another hearing officer. Although plaintiff had previously received approval for the hearing to be recorded, Gonzalez refused to allow it to be recorded. Gonzalez also refused to allow Ryan to testify and did not provide plaintiff with his requested evidence. In the disciplinary hearing report Gonzalez explained that he did not call Ryan as a witness because Ryan was not an eye witness to the incident. Therefore, his testimony would have been irrelevant. After the hearing, Gonzalez found plaintiff guilty. Gonzalez issued as a sanction fifteen (15) days in isolation and three (3) weeks loss of canteen privileges, suspended for sixty (60) days. Gonzalez, however, gave plaintiff credit for the time plaintiff had spent on awaiting action status. Plaintiff appealed the guilty finding to Dipalo, the Superintendent of SBCC. Dipalo denied plaintiffs appeal. Plaintiff received notice of the denial on January 7, 1999.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences that can be drawn from the complaint in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The “complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 371 Mass. 96, 98 (1977), quoting Conely v. Gibson, 355 U.S. 41, 45-46 (1957); see also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). Although the court is prepared to grant some leniency when applying the rules of the court to pro se litigants, ultimately the rules bind pro se litigants as they bind other litigants. Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985).
Count I. Plaintiff Challenges the Sufficiency of the Evidence
Plaintiff claims that the guilty finding imposed on him was not based on sufficient evidence. A prisoner challenging the validity of an adjudication by a disciplinary board may bring an action in the nature of certiorari under G.L.c. 249, §4. Hill v. Superintendent, M.C.I. Walpole, 392 Mass. 198, 199 n.2 (1984) (challenge to disciplinary board’s decision based on insufficient evidence should have been brought as an action in the nature of certiorari), rev’d on other grounds, 472 U.S. 44S (1985); Ford v. Comm’r of Correction, 27 Mass.App.Ct. 1127, 1128 (1989). The court’s scope of review is generally limited to whether DOC’s administrative decision is supported by substantial evidence. See Murphy v. Superintendent Mass. Correctional Inst., Cedar Junction, 396 Mass. 830, 833 (1986); Cepulonis v. Comm’r of Correction, 15 Mass.App.Ct. 292, 295 (1983).[3]
Certiorari claims based on prison disciplinary hearings must be brought promptly in order to rectify the detrimental effects of an invalid prison disciplinary proceeding, such as the imposition of isolation time or the loss of good time credits, while the individual remains in prison. Ford, 27 Mass.App.Ct. at 1128. Pursuant to G.L.c. 249, §4, as amended by St. 1986, c. 95, “an action shall be commenced within sixty days next after the proceeding complained of.” The failure to file a certiorari claim within the sixty (60) day statute of limitations is such a “serious misstep” that the complaint must be dismissed, even if the defendant fails to plead the statute of limitations as an affirmative defense. Pidge v. Superintendent, Mass. Correctional Inst., Cedar Junction, 32 Mass.App.Ct. 14, 18 (1992).
Here, plaintiff received notice on January 7, 1999, that his appeal had been denied.[4] Plaintiff, however, did not file his complaint with the clerk of this court until March 17, 1999. “For statute of limitations purposes, a complaint in an action where leave to proceed in forma pauperis is requested is generally deemed to have been filed on the day the motion is received by the Clerk of the Court." McGuinness v. Dubois, 1995 WL 169500 at 9 n.4 (D.Mass. March 15, 1995) (construing sixty (60) day limitations period under G.L.c. 249, §4), affd in part and rev’d in part on other grounds, 75 F.3d 794 (1st Cir. 1996). Sixty (60) days from January 7, 1999, is March 7, 1999. As a result, plaintiffs complaint which was filed on March 17, 1999, is time barred.
Plaintiff argues, however, that his complaint should be deemed filed on February 22, 1999, because that is the date that plaintiff placed the complaint in the prison mail box. See Commonwealth v. Hartsgrove, 407 Mass. 441, 444 (1990). In Hartsgrove, the plaintiff was convicted of rape and indecent assault andbattery and was sentenced to serve five to seven years at the Massachusetts Correctional Institution at Cedar *591 Junction (“MCI-CJ”). The plaintiff, seeking to appeal his conviction pursuant to Mass.R.A.P. 4(b), placed his notice of appeal, dated November 20, 1987, in a stamped envelope addressed to the “Clerk of Courts Superior Courthouse Dedham ...” in the institutional mailbox. Plaintiffs notice of appeal was not received by the Clerk until December 3, 1987, after the thirty (30) day appeal period consistent with Rule 4(b) had expired. Hartsgrove, 407 Mass. at 443. The court held that in the case of a pro se prisoner, for the purposes of Mass. R. A. P. 4(b), a notice of appeal “should be deemed to have occurred on the inmate’s relinquishment of control of his notice of appeal to the prison authorities.” Hartsgrove, 407 Mass. at 444. Thus, the court stated that the plaintiffs notice was filed on the date he placed it in the prison mailbox.
Plaintiffs contention, that the limitations period should accrue on the date that he relinquished control of it, fails for two reasons. First, as stated above, Massachusetts courts have clearly held that, for the purposes of certiorari, a complaint is deemed filed when the clerk of the court has received it. McGuinness, 1995 WL 169500 at 9 n.4; see also Shabazz v. Cole, 69 F.Sup.2d 177, 191 (1st Cir. 1999). Second, the Hartsgrove exception for prisoners is not applicable here because there is a fundamental difference between an action appealing a conviction and an action appealing the findings of a disciplinary hearing. If the former were reversed, the plaintiff would he released from prison, whereas if the latter were reversed, plaintiff would be spared a suspended sentence which would subject him to fifteen days in isolation and deprive him of three weeks of canteen privileges.
Although the imposition of isolation on a prisoner should not be taken lightly, and the loss of canteen privileges for three weeks deprives a prisoner of one of the few highlights in daily prison life, it does not compare to the injustice that would be served if a prisoner were barred from appealing a conviction which resulted in his confinement. Furthermore, a plaintiff appealing the finding of a disciplinary hearing has sixty (60) days to file, while a plaintiff appealing a conviction in superior court has only thirty (30) days. Because plaintiffs complaint is deemed filed on the day the clerk received it, March 17, 1999, plaintiffs complaint is barred by the statute of limitations enumerated in G.L.c. 249, §4, as amended by St. 1986, c. 95.
Count II. Defendants’ Violation of 103 Code Mass. Regs §430.00
Plaintiff claims that he has a private cause of action because defendants violated 103 Code Mass. Regs. §430.12 when they refused to record the minutes of the disciplinary proceedings with a tape recorder. Specifically, 103 Code Mass. Regs. §430.12 states that “(a]n indigent inmate . . ., shall be afforded a tape of his of his hearing upon prior written request by inmate . . .” Here, plaintiff made a written request, in accordance with 103 Code Mass. Regs. §430.12, to have the proceeding tape recorded, and defendants still did not allow plaintiff to do so.
Although “agency regulations have the force of law,” Royce v. Comm’r of Correction, 390 Mass. 425, 427 (1983) (citations omitted), a violation of departmental regulations does not equate to an automatic cause of action on behalf of the plaintiff. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998). “It is implausible to imagine that the Legislature, in granting the department [of correction] authority to promulgate regulations . . . was empowering the department to create possible civil liability against the officials who violated the regulations.” Hudson v. Comm’r of Correction, 46 Mass.App.Ct. 538, 545-46 (1999), quoting Martino v. Hogan, 37 Mass.App.Ct. 710, 720-21 (1994). Thus, to establish a claim entitling him to damages, plaintiff must show that the Legislature intended that the law would afford him a private cause of action.[5] Loffredo, 426 Mass. at 544. Because nothing in the text of 103 Code Mass. Regs. §430.12 suggests that it affords inmates a private cause of action, plaintiffs claim fails.[6]
Count III Constitutional Rights a. Denial of Evidence
Plaintiff alleges that defendants violated his due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution and article 12 of the Massachusetts Declaration of Rights when defendants denied his requests for a particular witness and certain evidence at his disciplinary hearing. He seeks damages under 42 U.S.C. §1983-.[7]
In order for a plaintiff to state a claim on which relief maybe granted for a violation of his due process rights, he must first establish that he was deprived of life, liberty, or property without due process of the law. Wolff v. McDonnell, 418 U.S. 539, 555-556 (1974). The Due Process Clause standing alone confers no liberty interest in freedom from state action which is within the limits of the sentence imposed on the inmate. Sandin v. Conner, 515 U.S. 472, 480 (1995). Under certain circumstances, however, “states may . . . create liberty interests which are protected by the Due Process Clause.” Sandin, 515 U.S. at 483-84. Those liberty interests are “generally limited to freedom from restraint which . . . impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin, 515 U.S. at 484.
In addition, the Supreme Judicial Court has held that article 12 of the Massachusetts Declaration of Rights provides at least as much due process protection as does the Due Process Clause of the U.S. Constitution. Hastings v. Comm'r of Correction, 424 Mass. 46, 51-52 (1997). Thus, the same standard, “freedom from atypical and significant hardship," is used to determine whether or not a deprivation of a liberty interest has occurred under the Massachusetts *592 Declaration of Rights. Hudson, 46 Mass.App.Ct. at 543.
In order for a plaintiff to establish a claim for a violation of his due process rights for a failure to call witnesses at a disciplinary hearing, a plaintiff must demonstrate that a defendant infringed upon his liberty interest by sentencing him to confinement which constitutes an atypical and significant hardship. Valentine v. Honsinger, 894 F.Sup. 154, 158 (S.D.N.Y. 199S); see Sandin, 515 U.S. at 484. The Court has not articulated a hard and fast rule regarding the length or type of sanction that would give rise to an “atypical and significant hardship.” The court has suggested, however, that “this standard will not be met unless the disciplinary and administrative sanctions are onerous.” Jenkins v. Haubert, 179 F.3d 19, 28 (2nd Cir. 1999); see Sandin, 515 U.S. at 486.
Plaintiff here has failed to allege that a deprivation of his liberty has occurred. Valentine, 894 F.Sup. at 158. Plaintiff merely alleges that he received a suspended sentence, fifteen (15) days in isolation and three (3) weeks loss of canteen privileges, suspended for (60) days. These sanctions, as a matter of law, are not onerous. Jenkins, 179 F.3d at 28. Thus, defendants did not deprive plaintiff of a liberty interest.
It is undisputed that, for the purposes of a disciplinary hearing, an inmate may call and question witnesses in his defense or submit other evidence to the hearing officer. 103 Code Mass. Regs. §430.14(4). These rights, however, are curtailed by prison officials’ interests in administering an orderly institution. Kenney v. Comm’r of Correction, 393 Mass. 28, 35 (1984). “Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority as well as limit access to other inmates to collect statements or to compile other documentary evidence.” Ponte v. Real, 471 U.S. 491, 496(1985), citing Wolff, 418 U.S. at 566.
Before determining whether an inmate may present evidence and/or witnesses, the hearing officer may consider (a) relevance; (b) whether the evidence is cumulative or repetitive; (c) hazards presented by an individual case; (d) unavailability of the reporting staff person or other staff person . . . for good cause; (e) failure of the inmate to provide a summary of the expected testimony of a proposed witness. 103 Code Mass. Regs. §430.14(4)(a)-(e).
A plaintiff may also establish a deprivation of a liberty interest in violation of the federal and state constitutions if prison officials do not properly document why a requested witness was not allowed to testify at a disciplinary hearing. Although the federal and the state constitutions generally provide a prisoner an equal amount of due process protection, the precautions necessary to satisfy both documents differ slightly with respect to procedures used to document the denials of witnesses at disciplinary hearings. In order to satisfy the Due Process Clause of the United States Constitution, the denial of a prisoner’s request for witnesses and evidence must be documented in writing when a liberty interest is at stake. Ponte, 471 U.S. at 496. The hearing officer, however, does not have to record this information in writing at the time of the hearing. Ponte, 471 US. at 496. In order to satisfy the Due Process Clause of the state constitution, the presiding officer must document in writing any denials of a prisoner’s request for witnesses or evidence if he enters a guilty finding at the hearing. Kenney, 393 Mass. at 35.
Here, plaintiff challenges the fact that neither Hammond nor Gonzalez permitted Ryan, the witness that plaintiff had requested, to testify, nor did they provide plaintiff with particular evidence that he had requested. As stated above, the hearing officer does have the discretion to refuse to call an inmate’s requested witnesses and to refuse to allow an inmate to produce certain evidence if any or all of the five criteria are met. See Ponte, 471 U.S. at 496. In this case, both Hammond and Gonzalez satisfied plaintiffs due process rights by documenting in writing why Ryan was not called as a witness. Hammond sent written notice to plaintiff explaining that plaintiffs request for Ryan to testify was denied because Ryan’s testimony would have been irrelevant or repetitive. Hammond further explained in this notification that the other evidence which plaintiff requested would not be provided to him because it was either irrelevant or non-existent. Similarly, Gonzalez stated in writing that plaintiffs request for Ryan to testify was denied because Ryan was not an eye witness. Therefore, his testimony would have been irrelevant.
In light of the discretion that defendants have to deny to call a requested witness, combined with the fact that defendants documented why they did not call Ryan as a witness, plaintiff has failed to allege that defendants deprived him of a liberty interest. Thus, defendants did not violate his due process rights, and plaintiffs claim fails.
b. Fair and Impartial Hearing Officer
Plaintiff claims that defendants violated his due process rights by various acts or omissions performed by Hammond and Gonzalez. Specifically, plaintiff claims that Hammond and Gonzalez, as the presiding officers of his disciplinary hearings, were not impartial (1) because they failed to call Ryan to testify at the disciplinary hearing and they failed to provide plaintiff with certain evidence; (2) because they failed to record the disciplinary proceedings; and (3) because Hammond referred to plaintiff with a racial slur. Courts have held that a prisoner is entitled to a disciplinary hearing before a fair and impartial hearing officer in order to satisfy the requirement of the Due Process Clause. Wolff, 418 U.S. at 571.[8] The level of impartiality required, however, “does not rise to the level of *593 that required of judges generally.” Francis v. Coughlin, 891 F.2d 43, 46 (2nd Cir. 1989).
Here, it is undisputed that Hammond and Gonzalez presided over plaintiffs first and second disciplinary hearings respectively and that, in their capacity as the presiding disciplinary hearing officers, they controlled the evidence which was presented at the hearing. Hammond and Gonzalez’s failure to call a certain witness, to provide plaintiff with particular evidence, and to record the disciplinary proceeding however, does not render either of them biased or render their decision making arbitrary as a matter of law. McGuinness v. Dubois, 1995 WL 169500 (D.Mass.). “In the absence of allegations of specific facts indicating bias or other improper motive,” a plaintiffs complaint challenging the impartiality of a disciplinary hearing officer fails. Here, plaintiff has failed to allege facts which indicate that either Hammond or Gonzalez acted partially. McGuinness, 1995 WL 169500 (D.Mass.). Similarly, plaintiff has failed to allege specific facts which indicate bias or improper motive.
Moreover, plaintiff claims that Hammond’s use of a racial name indicates bias and partiality. Even if Hammond’s actions rendered him biased, however, the issue is moot because plaintiff received a second disciplinary hearing. Hogan v. Hogan, 320 Mass. 658, 662 (1947). Therefore, as a matter of law, plaintiffs claim fails.
Count IV The Massachusetts Civil Rights Act
Plaintiff claims that defendants violated the Massachusetts Civil Rights Act, G.L.c. 12, §11H and I, when Hammond called plaintiff a racial slur. “Threats, intimidation, or coercion” constitute an essential element of any claim under G.L.c. 12, §11H and I. See Butler v. RMS Technologies Inc., 741 F.Sup. 1008, 1011 (1990). In Butler, the Court held that an allegedly offensive and derogatory remark did not rise to the requisite level of threats, intimidation, or coercion within the meaning of the statute. Id. at 1011. Here, plaintiffs bare allegation that Hammond called him a racial name does not support a claim under G.L.c. 12, § 11H and I. Butler, 741 F.Sup. at 1011; Tatro v. Kervin, 41 F.3d 9 (1st Cir. 1994). Thus, plaintiffs claim fails.
ORDER
For the forgoing reasons, defendants’ Motion to Dismiss is ALLOWED. Accordingly, judgment shall enter in favor of defendants.

 The d-report charged plaintiff with (1) disobeying an order; (2) violating a departmental rule or regulation; (3) failure to keep his quarters in accordance with institutional rules; (4) conduct which disrupts or interferes with the security or orderly running of the institution; (5) participating in or encouraging a riot, work stoppage, hostage taking or unauthorized group demonstration; and (6) possession of items, including money or currency not authorized for retention or receipt by the inmate.

 The United States Constitution requires only that some evidence support the disciplinary finding, while the law of the Commonwealth requires that the finding be supported by a more stringent “substantial evidence” standard. Hill, 472 U.S. at 455-56; McLellan v. Acting Superintendent Mass. Correctional Inst., Cedar Junction, 29 Mass.App.Ct. 122, 127 (1990).

 Defendants contend that plaintiff received notice of the denial on December 30, 1998. Sixty (60) days from December 30, 1998, is February 28, 1999. This discrepancy is immaterial, however, because, under either scenario, plaintiffs complaint is barred by the statute of limitations.

 But See Torres v. Dubois, 1995 WL 64345 (Super. Ct. Oct. 26, 1995). In Torres, the court held that the plaintiff was entitled to another disciplinary hearing for various reasons.

 Plaintiff does not have a private cause of action for damages against defendants as a result of the violation of 103 Code Mass. Regs. §430.12. Plaintiff may have stated a due process violation if he could have proven that he has a liberty interest at stake, i.e., that he had been deprived of good time credits as a result of the hearing. Plaintiff, however, received only a suspended sentence.

 Defendants argue that the holding in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), states that a prisoner may not bring a claim arising from a disciplinary hearing for damages under §1983 if “a judgment would necessarily imply the invalidity of his conviction or sentence" unless the prisoner could demonstrate that the conviction or sentence had been previously invalidated on direct appeal, expunged by executed order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court’s issuance of a writ of habeas corpus." The First Circuit has held, however, that “the validity of a disciplinary or administrative segregation sanction that does not affect the overall length of the prisoner's confinement is not barred by Heck . . ." Shabazz, 69 F.Sup.2d at 194.

 In Wolff, supra, the Court refused to rule that the disciplinary proceedings were not sufficiently impartial because there was no record evidence of arbitrary decision making violative of due process. Wolff, 418 U.S. at 571.