Lauriat, Peter M., J.
The plaintiff, Robert W. Anderson, Jr. (“Anderson”) pro se, is currently in the custody of the Department of Correction (“DOC”) at the MCI Bridgewater State Hospital (“BSH”). Anderson has brought this action in the nature of certiorari under G.L.c. 249, §4, against defendants Kathleen M. Dennehy (“Dennehy”), the Massachusetts Commissioner of Correction; Bernard F. Brady (“Brady”), the Superintendent of the Old Colony Correctional Center; and James R. Borden (“Borden”), a Disciplinary Hearing Officer.
Anderson alleges that the defendants violated his rights under the Massachusetts and Federal Constitutions. He challenges the defendants’ implementation of DOC regulations and the manner in which he had been found guilty of and punished for an alleged institutional disciplinary infraction. On May 30, 2007, the defendants filed a Motion for Reconsideration of the Court’s Anticipated Denial of Defendants’ Motion to Dismiss the Complaint, contending that Anderson’s present action is time-barred under G.L.c. 249, §4, because his claim for certiorari was filed more than sixty days after the challenged proceedingthe denial of Anderson’s disciplinary appeal on February 13, 2007. For the following reasons, the defendants’ Motion to Dismiss is denied.
*307 BACKGROUND
Accepting as true the factual allegations of Anderson’s complaint and any reasonable inferences to be drawn therefrom, Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), the material facts are as follows. On or about March 4, 2006, while an inmate at the Old Colony Correctional Center (“OCCC”), Anderson was charged with the following disciplinary offenses: use of obscene, abusive or insolent language or gesture; conduct which disrupts the normal operation of the facility or unit; and violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program. Anderson pled not guilty to these disciplinary charges.
Borden, the Disciplinary Hearing Officer (“DHO”), found Anderson guilty at a hearing held at BSH on December 4, 2006. On January 2, 2007, Anderson filed an administrative appeal of his disciplinary conviction as well as an appeal of all his disciplinary convictions and associated sanctions. Together with the appeal, Anderson sent a letter to Dennehy, asking that she appoint an independent appellate authority in accordance with 103 CMR 430.18(3), because ofhis belief that the administrative staff at OCCC, including Brady, was not impartial and thus could not conduct a fair review of his appeal. He received no response. On February 13, 2007, Brady denied Anderson’s administrative appeal. He was sanctioned with 45 days’ loss of his telephone and his canteen privileges. Canteen privileges were revoked immediately upon denial of the appeal. The loss of telephone privileges was deferred to April 13, 2007. Anderson submitted the complaint in the present action for marling from OCCC on April 13, 2007, but it was not mailed until April 17, 2007.
DISCUSSION
An action in the nature of certiorari must be commenced by filing a complaint “within sixty days next after the proceeding complained of.” G.L.c. 249, §4. The last administrative action taken by the DOC, whose proceeding gives rise to the present complaint, was Brady’s denial of Anderson’s appeal on February 13,2007. The statute of limitations begins to run upon the conclusion of the final proceedingand not upon Anderson’s belated receipt of notice. “Neither the word ‘notice’ nor the word ‘receipt’... appears in G.L.c. 249, §4. Had the Legislature intended to begin the relevant period from the actual receipt of a decision, it could easily have said so, as it has done elsewhere.” Committee for Public Counsel Services v. Lookner, 47 Mass.App.Ct. 833, 836 (1999).
I.
The first day for the running of the statute of limitations is the first day after the date of the final administrative proceeding. See id. at 835 (sixty days after March 4, 1996, was May 3, 1996). A civil action can be commenced by “mailing to the clerk of the proper court by certified or registered mail a complaint and an entry fee prescribed by law.” Mass.R.Civ.P. 3 (“the mail box rule”).
The Supreme Judicial Court has established that “the inmate’s relinquishment of control ofhis notice of appeal to the prison authorities” marks the commencement of the action. Commonwealth v. Hartsgrove, 407 Mass. 441, 444 (1990). In assessing the equities, the Court found that “(i]t would be unfair to hold the defendant accountable for the vagaries, if any, of the prison mail system.” Id. at 445. The defendants assert, however, that Hartsgrove does not control with regard to disciplinary proceedings. See Tibbs v. Dipalo, 2000 WL 1273854 (Mass.Super. March 2000) [11 Mass. L. Rptr. 589]. The court in Tibbs refused to apply the mail box rule to inmates’ appeals of disciplinary committee findings because generally, complaints in actions in the nature of certiorari are deemed filed upon receipt by the clerk and because a prison sanction on appeal invokes a less significant liberty interest than does an appeal of a criminal conviction. Id. at *3.
To support its assertion that there exists a statewide practice of deeming actions in the nature of certiorari filed upon receipt of the complaint by the Clerk and not upon mailing the complaint to the Clerk, the court in Tibbs cited McGuinness v. DuBois, 1995 WL 169500 (D.Mass.) (March 15, 1995). In that case, the U.S. District Court held that “a complaint in an action where leave to proceed in forma pauperis is requested is generally deemed to have been filed on the day the motion is received by the Clerk of Court.” McGuinness v. DuBois, 1995 WL 169500, at *9 n.4 (D.Mass.) (March 15, 1995). In McGuinness, the plaintiff filed his complaint “approximately 22 months” after the final administrative actionthe denial of his appeal. Id. at *3. In concluding that the statute of limitations ran from the filing of the complaint, as opposed to its mailing, the court in McGuinness relied on two cases, Rodriguez v. Carhart, No. 91-10665, 1991 WL 134356, at *2 (D.Mass. July 12, 1991), and Rosenberg v. Martin, 478 F.2d 520, 522 n.1a (2d Cir. 1973), in which the statute of limitations was three and six years, respectivelynot sixty days, as in the present case. Id.
Here, Anderson had to meet a very short statute of limitations, 60 days, under G.L.c. 249, §4. He did everything he could to satisfy that statute and almost missed it through no fault of his own. Anderson first received notice that his appeal had been denied on February 20, 2007, a week after his appeal had been denied. The decision was mailed to him at the Souza-Baranowski Correctional Center (“SBCC”), although by then, Anderson had been transferred to BSH. On Friday, April 13, 2007, Anderson filled out a “charge slip” to have the postage deducted from his account and submitted the slip to the Treasurer’s office (“Tal *308 bot House”).[1] Because Talbot House was apparently closed on Friday, and the following Monday was a state holiday, Anderson’s Complaint was not mailed until Tuesday, April 17, 2007, despite the fact that Anderson placed it in the mail and thus relinquished control of it on April 13, 2007.
Moreover, Anderson had very limited access to his legal papers and even to postage in the 60 days he had to file a complaint. Between the time when his appeal was denied and the lapse of the 60-day statutory period, Anderson was apparently transferred four times between BSH and SBCC; each time, his legal papers were delayed by several days. At some point, he was also placed on mental health watch, where he was not permitted any legal papers. Finally, at BSH, Anderson had limited access to stamps, due to a newly implemented policy prohibiting patients from buying more than 10 stamps per week. Anderson had to resort to using a charge slip in order to meet the filing deadline.
II.
The second basis, upon which the court in Tibbs refused to apply the mail box rule to actions in the nature of certiorari was its distinction between liberty interests invoked by appeals of administrative sanctions and criminal convictions; the latter is, presumably, more significant and thus worthy of the more permissive mail box rule. Tibbs, 2000 WL 1273854 at *3. Criminal convictions, according to Tibbs, might, upon reversal, result in release from prison, while the loss of canteen rights and similar administrative sanctions do not implicate a comparable liberty interest. Id. However, in the present context, there is no logical basis for distinguishing among the liberty interests invoked by criminal convictions and administrative sanctions. A successful appeal of a criminal conviction will not necessarily result in an inmate’s release. More importantly, though, such distinctions would require that liberty interest values be assigned to each privilege lost as a result of a sanctionpresumably, the highest being the interest of being free from incarceration, invoked by appealing a criminal conviction, and then, on a descending scale, the lesser liberty interests lost through disciplinary sanctions of varying degrees of severity and addressed in a certiorari action.
Disciplinary sanctions which DOC officers may impose on inmates range widely, and depend on the category of the offense: Category I involves the killing or aggravated assault of another, attempted escape, rioting, possession of a gun and explosives, sexual assault of another, etc. 103 Code Mass. Regs. §430.24. Sanctions for Category I offenses range from the loss of television, radio, canteen, visits, phone, etc. privileges for 60-120 days, to cell restriction, to the loss of statutory good time for up to 360 days and referral to and incarceration in the Department Disciplinary Unit (DDU) for up to 10 years. 103 Code Mass. Regs. §430.25. Category II offenses include assault, fights, unauthorized possession of items likely to be used in escape, etc. 103 Code Mass. Regs. §430.24. Sanctions range from the loss of television, radio, canteen, visits, phone, etc. privileges for 30-90 days, to the loss of statutory good time not exceeding 180 days, to referral to the DDU for up to 5 years. 103 Code Mass. Regs. §430.25. Category III offenses include lying to staff, engaging in sexual acts with another, use of obscene language, refusing transfer, impersonating another inmate, extortion, etc. 103 Code Mass. Regs. §430.24. Sanctions range from the loss of television, radio, canteen, visits, phone, etc. privileges for up to 60 days, to restitution, to cell restriction for up to 10 days. 103 Code Mass. Regs. §430.25. Finally, Category IV offenses include receipt or possession of contraband, effacing state property, use of mail or telephone in violation of established terms, self-mutilation, failure to maintain hygiene, etc. 103 Code Mass. Regs. §430.24. Sanctions for Category IV offenses range from a written reprimand, to the loss of television, radio, canteen, visits, phone, etc. privileges for up to 30 days, to room restriction for up to 5 days. 103 Code Mass. Regs. §430.25. Anderson’s violations fall within categories 3 (use of obscene language and conduct which disrupts the normal operation of the facility) and 4 (violating any departmental rule or regulation, etc.). The sanctions for these offenses alone could range from a written reprimand to cell restriction for up to 10 days.
The mode of filing a complaint and the commencement of the statute of limitations should not depend on the type of action which the complaint initiates or the liberty interests that the deprivation in question may invoke. The standard articulated in Tibbs goes not only against the spirit of Hartsgrove, but it also charges the court with assigning a value to the liberty interest impinged upon by a given sanction. Given the broad range of sanctions and the different values that individual inmates might assign to a given privilege, assessing liberty interests invoked by each lost privilege in order to determine at what point in time a particular complaint may be considered submitted would turn into a glass bead game.
III.
Finally, the defendants assert that a rule of court, i.e. the mail box rule, cannot override a contrary statutory provision, G.L.c. 249, §4, which requires that actions in the nature of certiorari be “commenced within sixty days next after the proceeding complained of.” G.L.c. 249, §4. However, the mailbox rule, codified in Mass.R.Civ.P. 3, is not in conflict with G.L.c. 249, §4. The mail box rule prescribes the manner in which an action is commenced, by mailing the complaint to the clerk, while G.L.c. 249, §4 designates the commencement of the running of the statute of limitations.
Applying the mail box rule to complaints for certio-rari, Anderson’s complaint was filed when he placed it in the inmate mail system on April 13, 2007, even *309 though his account was not charged for postage until April 17, 2007, and not picked up by the United States Post Office until even later. Counting sixty days after February 13, 2007, with February 14, 2007, being the first day, the statute of limitations did not expire until Saturday, April 14, 2007. Even were one to consider as the first day February 13, 2007, the day of the proceeding, the statute would still run until April 13, 2007. The defendants’ assertion that the statute expired on April 12, 2007, is based on two apparent errorscounting the day of the proceeding as the first day and using the calendar for 2008, a leap year. Anderson complied with the statute of limitations under G.L.c. 249, §4 and filed his complaint timely.
ORDER
For the foregoing reasons, the defendants’ motion to dismiss the complaint on statute of limitations grounds is DENIED.

 The slip was erroneously dated April 13, 2004but the subsequent date of payment, April 17, 2007, makes it clear that the slip was filled out, in fact, in 2007 and not in 2004.